## KEKAHA *vs.* ISAAC D. IAEA, *et al.*

### IN EQUITY.  BEFORE PRESTON, J.

### JUNE, 1886.

A deed set aside for fraud of the grantee: it appearing that the grantor, an aged Hawaiian, was imposed upon, and induced to make an absolute conveyance under the belief that he was signing a trust-deed.

### DECISION OF PRESTON, J.

The complainant, by his bill, alleges that on May 29th, 1885, he was possessed of certain real estate, situate at Makawao, on the Island of Maui, of the value of $4000 and upwards; that he is sixty years and upwards of age, and that he is unable to read or write: that he has had fourteen children, all of whom are dead, leaving six grandchildren, of whom the female defendant is one: that for some months prior to said 29th of May defendants repeatedly urged complainant to make over all his property to them, in trust, for the use of complainant, in order to relieve him from the care and management of same, and kept working on the feelings and affections of the complainant in order to secure the same: that complainant ultimately consented thereto, and that the defendant, Isaac, thereupon had an

instrument drawn by one John W. Kalua, an attorney at law, residing at Wailuku, who took his instructions solely from said defendant, complainant not knowing what said instructions were: that on said 29th of May, said Isaac told complainant that said instrument was ready to be signed and requested him to go to Mr. Kalua's office and sign same, at the same time fraudulently and falsely leading complainant to believe that said instrument was one in accordance with their previous understanding, and conveying complainant's real estate to the said defendants in trust for the use of complainant: that complainant went to Mr. Kalua's office and signed said instrument, supposing same to be such as said defendant had led him to believe it was: that complainant never had possession of the instrument and knew nothing more of it, till he was informed by Mr. Everett, Sheriff of the Island of Maui, in the early part of this year, of the nature and effect thereof, and that he then ascertained that the same was a warranty deed of all his land to the defendants jointly and that no trust had been created in favor of complainant, and no reservations or exceptions whatever had been made in his behalf, nor any provision made for complainant's other grandchildren.

The complainant further says that there was no consideration whatever for said deed received by complainant, nor agreed upon, and that it was never his intention to execute any such instrument as the one in question, nor to convey said property to said defendants, other than for the purpose of enabling them to manage the same for complainant, he being old and feeble, nor had it ever been his intention to disinherit his other grandchildren. The bill further alleges, that the defendants had or they were about to mortgage or otherwise encumber the property, and prays a reconveyance of the property, and an injunction and general relief.

The answer denies that defendant urged the complainant to make the deed, or that the defendant, Isaac, ever gave to said Kalua any instructions, as to drawing any conveyance from the complainant to the respondents, or that said Isaac by any words

or acts led complainant to believe that any deed drawn by said Kalua was a deed in trust, or that said Isaac or his wife did or said any matter, thing or word in relation to said deed that could have been misleading to complainant in and about the same.

The answer admits the execution of the deed by complainant; and denies that complainant was informed that it was a deed of trust; and charges that complainant was well acquainted with the nature and contents of the said deed, and that the same was read over and explained to the complainant before the execution thereof; and avers that complainant received from the defendants $300 as consideration money for the said land on the day said deed was executed as *said* deed recites; and that complainant executed the same understandingly; and that said deed was drawn at the instance and request of complainant, and in accordance with his repeated wishes; and that the defendants by reason of their care, kindness and attention to complainant should possess and enjoy said property.

The answer further alleges that the defendants have executed a mortgage of the said property to Mr. Cartwright to secure the sum of $1000 lent to them, and that the same is still outstanding: that for some time previous to the execution of said deed the defendant Isaac had, under a full power of attorney from the complainant, managed and controlled his business, property and affairs, and that the defendants have, since the execution of the deed, until a short time previous to the filing of the bill, cared for, attended to, and supported complainant, and that the consideration in said deed recited was good and valuable.

The cause was heard by me on the 14th and 16th inst., and evidence was taken at some length, and upon such evidence I find that the complainant has failed to establish his allegations that the defendant, Keahi Pakamea, urged the complainant to execute the deed, or that she in fact took any active part in the transactions complained of.

The deed in question is an absolute conveyance from the complainant to the defendants, of parcels of land containing

between 500 and 600 acres, valued at $5000, (part being let at $300 per annum), for the alleged consideration of $300 and natural love and affection. It was executed on the 29th of May, 1885, and the defendant, Isaac, left Wailuku the same night and arrived in Honolulu by steamer early on the morning of the 30th, and placed the deed on record at 9.30 A. M., and soon after negotiated a mortgage through Mr. Castle upon the property, for $1000. The mortgage was executed on the 15th of June, but the money was not actually received by the defendant until about the 14th of July.

The material point to be considered is, what was the intention of the complainant when he executed the deed in question.

Kamehaikana, (k.) a witness called on behalf of the complainant, testifies, that some time last year he was present and heard the defendant, Isaac, ask the complainant to be his "Kahu malama waiwai," (agent or trustee) for his real and personal property, to which the complainant agreed. The defendant then said, "go down to Kalua's to acknowledge the paper;" the complainant replied, "I cannot go down to-day but I will go on some other day." The witness further testifies that afterwards having heard that the complainant had executed an absolute conveyance of the property, he spoke to the defendant, Isaac, about it, who put his hand to his mouth and said, "hamau," (hush, or be silent). The defendant absolutely and unqualifiedly denies these statements, and further says he never knew the witness until he saw him in Court, although he admits that he knew where the witness lived, about an eighth of a mile from the complainant.

John Richardson testifies that in the last part of December, last year, having heard from Mr. Everett something about the deed, and having been requested by him to make some enquiries respecting it, he spoke to the defendant, Isaac, and told him that the complainant was greatly put out when he heard that a deed had been executed instead of a trustee paper: that Isaac replied he did not know it was anything else, and added, that he was not present when the deed was executed, and said that

what was intended was a trustee deed from the complainant to himself, in trust for his "moopunas" (grandchildren), his wife being one of them, but when the deed was made out he saw that only one grandchild's name was in it, but supposed that the old man (complainant) had so instructed Kalua, and therefore thought no more of it. The witness further testifies, that he asked Isaac, "as the deed was not what the complainant intended, would he be willing to compromise;" and the defendant said "yes." On his return from Molokai the witness again saw the defendant who told witness he had compromised with complainant.

. The defendant denies that he told Richardson that the contents of the deed were not as agreed.

The complainant testifies, "I remember signing a paper in Kalua's office; that's where the trouble came in; if Kalua had done what was right I would not be here to-day; the paper was made at Kalua's office; neither defendant, Isaac, nor his wife were there; I went to Kalua's office because Isaac told me to go and sign a trustee deed; Isaac had a power of attorney from me to take care of the cattle and other personal property; we divided the increase of the cattle, half to him and half to me. The difference between the first and second papers is, the first one is a power of attorney and is all right, the second one is not right. . I understood I was to go to Kalua's from Waiehu and Isaac from Makawao, to execute another trustee paper; I first heard that the paper I signed at Kalua's was an absolute deed, from Mr. Everett, after he got a copy from Honolulu; I asked him to obtain a copy; Isaac and I never agreed that it was to be an absolute deed; there was $100 in his hands; I asked, what's that for? he said he had mortgaged the land; I told him he had no right to mortgage; Isaac never told me that I was to sign a deed to him and his wife; he asked me three times to go to Kalua's; all those times he spoke of a trustee document only; he had charge of all my papers, patents and leases; one lease is for $300 a year; he collected my rents; Isaac gave me the $100 in my house at Waiehu; no money, at any time;

was paid me in Kalua's office; the deed mentions $300; all I got was $100; neither Pake (Waiwaiole) or Kalua ever read the deed to me; I was questioned only as to where I got the Royal Patents; I never told Kalua how to draw the deed; when the deed was all drawn up Kalua wrote my name and I made my cross; I put my cross on the paper because I thought it was good; Kalua never explained the paper to me; at the time I put my cross I thought I was executing a trustee paper for Isaac to hold in trust for all my grandchildren and they to take care of me, and when I die all the property was to them."

E. H. Bailey testifies: I know complainant's land at Makawao, said to be sold to Isaac; I consider that land worth $5000 at least; on 14th July, 1885, had a talk with Isaac in reference to a piece of land I had sold to complainant; he had paid part of the purchase money; I went to complainant for the balance; he said Isaac would soon collect some rents and pay me; in July Isaac came and paid me the balance; he said he was a trustee and had to hooponopono Kekaha's waiwai (look after Kekaha's property) ; at that time I had not made out deed for the property; he then said, "make the deed to my wife;" I said I never got instructions to that effect from Kekaha; he said "that is the share of Kekaha's property that is going to my wife;" told him Kalua would make out deed and I would attend to it as soon as I could; a few days afterwards I saw complainant and told him I had received balance of money, and that Isaac told me "to make deed out to his wife;" complainant said "No, don't do any such thing, you make the deed to me;" I received from Isaac $147.

Mr. Everett was also called as a witness for the complainant, but from the view I take of the case his evidence is not important.

The defendant was called as a witness for the complainant, and afterwards testified on his own behalf, and stated: I have borrowed $1000 on land included in deed to me; I applied that money as follows: $500 to Kekaha personally, the rest went to pay rents of leased lands, and also to Bailey for his land, some of

it I used myself; mortgage was made on 15th June, I saw Mr. Castle first week in June; deed had already been made which I brought down on 29th of May; some months before deed was made Kekaha and I had talked about mortgage and agreement made; I came down with the deed for the purpose of raising loan; power of attorney does not give me power to mortgage.

In answer to questions by the Court, he says: I gave to Kalua $150 before the deed was made, and gave him $150 more after the deed was executed, a few days after, before I came to Honolulu; I brought deed down to record; deed was executed on Friday, I think; I left Kahului by Maalaea way; I can read English; my answer was read to me; I understood it; the statement in my answer that we paid $300 on the day the deed was executed is not correct; what I testified is true that the money was paid in two payments; I did not see Kalua pay Kekaha the money.

The defendant further testified as to alleged troubles between the complainant and his grandchildren, and says: Owing to all this trouble, complainant said to me "he would deed all his land to me and my wife, provided I was to take care of him and the rest of the family." One month after this suggestion I told him I was ready to have deed made as he wanted, so I went and saw Kalua; it must have been complainant who told Kalua to draw deed; in last week of May complainant asked me if deed was ready; I told him I would see Kalua; found deed was ready and informed complainant; on Friday at 2 P. M. I came down from Makawao, got deed which was executed, took it and showed it to him, told him to go to Kalua's and get money; I remember paying Bailey balance due him; I told him to make deed in my wife's name; when I found out deed was not made out only in wife's name, I meant to ask complainant, but this suit intervened.

This statement appears to be false on the face of it. The defendant knew when he mortgaged the property that the deed was made to himself and wife, and no question was raised by complainant for six months afterwards. The suit was commenced on the 4th May last.

The defendant says: I also intended to ask Kalua if Bailey had given him instructions to make deed in my wife's name, but I dropped it as I was accused of defrauding complainant; I did not tell Bailey that land was my wife's share; I did tell him that I had the management of complainant's property; it was the fault of the one who drew the deed that my name was put in with my wife's; perhaps complainant instructed; original understanding was it was to be in my wife's name only; I thought that the instrument would be drawn up in wife's name, not mine; no reservation of life interest was made for complainant; I was to get the rents immediately, that was the understanding. Complainant said: "I am going to give the property to you, you to look out for me and I look out for you;" Am sure I gave Kalua no instructions about making the deed; when I paid the $500 to complainant his wife was present; I did not get release of dower because Kekaha's wife was deadly opposed to the transaction between us; I told Kalua the consideration was $300; I paid the complainant all in silver, $500; paid Bailey his balance, $150; I went to Paia with $289.75, being balance left; I paid Everett $50.25; debt of complainant to Edward Edwin, $25; others I forget; have used the balance myself; I did not tell anybody about the $500 I paid complainant; have collected rents twice since deed; the first $150 I paid all to complainant; the next received $150; paid complainant $100, and kept rest myself.

J. W. Kalua identifies deed, and says: This deed was drawn by my clerk, Waiwaiole; I gave him orders; Isaac gave me the instructions how to draw it; he told me to make a deed from complainant to himself and wife, consideration $300, love and affection. The witness states that he read deed to complainant and explained it to him, and that he said he was satisfied; that he paid complainant $150 two weeks before execution of deed; he had called to ask if deed was ready; "I did not know what deed he meant; he asked me if Isaac had left me any money. After execution of deed I paid Kekaha money; not positive how much, $100 or $50; gave all receipts to Isaac

(defendant admits this but says they are lost) ; week afterwards I paid balance of $150; I delivered deed to Isaac on same day; he said he was going to Honolulu, then I asked Isaac for balance of purchase money; I think Waiwaiole was present when I paid balance of second $150 to complainant; complainant never told me to insert Isaac's name to the deed; Isaac paid me the money in the morning of the day he went to Honolulu; am quite sure; he did not leave me $150; can't remember how much, was busy; I paid complainant the balance after I received money from Castle out of my own money which I advanced Isaac; I did not know he was going to mortgage; did not tell me." The witness also stated that on settling with Isaac he deducted from the mortgage money the amount he paid complainant.

Waiwaiole confirms Kalua's testimony as to the deed being read to complainant, but says that he never saw complainant at the office afterwards, and did not see Kalua pay him any money.

On this testimony I am asked to dismiss this bill and thereby declare this transaction complained of valid. This I cannot do, as it appears to me that the defendant has perpetrated a gross and long premeditated fraud upon the complainant. The defendant is contradicted in so many important particulars, especially in the statement that he did not instruct Kalua to prepare the deed, that I am unable to give credit to any part of his testimony favorable to himself. The defendant was the confidential agent of the complainant, and appears to me to have wished to raise some money on this property, but finding the power of attorney he held insufficient for the purpose, devised this scheme to effect his purpose. This is one of the many cases which, unfortunately, come before this Court, where old and industrious Hawaiians are induced by their younger relatives to make away with property accumulated by industry, to enable such younger relations to live in idleness.

This defendant appears to think it very meritorious on his part that he and his wife, the complainant's grandchild, have

looked after and cared for the complainant, as they say, and that they are therefore entitled to deprive him of all his property in his lifetime, instead of considering that it is their duty (in which they ought to take a pride) to look after and comfort the complainant, and endeavor to make the remainder of the life of their grandparent as free from care and trouble as possible.

From the defendant's own showing I am of opinion that the deed executed by the complainant is not such an instrument as he intended to execute, and was led to believe by the defendant Isaac he had caused to be prepared, and although the deed was read over to him by Kalua, I do not think he understood the full effect of it. The statement of the defendant as to the disposition of the loan, if true, is inconsistent with the claim that the deed was intended to be absolute. He received, according to Kalua's testimony, $940 or $960. He says "he paid complainant $500, Bailey $150, Everett $50.25, Edwin $25, making together $725.25, and others he forgets, and retained $289.75 for himself:" this is evidently incorrect.

There is one part of the transaction that I wish to say a few words upon: Kalua says he has been acquainted with the complainant since 1869, and he has had business transactions with him, and he says nothing was said about releasing his wife's dower, nor did he enquire of the complainant if he were married; neither does it appear that any inquiry was made on behalf of the mortgagee as to this fact. Had these inquiries been made it is most probable that this fraud would have been detected at the outset.

Being of opinion that the complainant has been imposed upon, and that the deed has been fraudulently obtained by the defendant Isaac, I do find and declare the said deed to be fraudulent and void as against the complainant, and direct the same to be delivered up; and do further order that the defendants execute a deed, in a form to be approved, revesting the property in the complainant, subject to the mortgage, and that the defendant Isaac indemnify, in such a manner and form as may be approved by the Court, the complainant from the pay-

ment of the principal and interest money secured by the said mortgage; and also that he pay the costs of this suit.

*Kinney & Peterson,* solicitors for complainant.

*W. R. Castle,* for defendants.

June 28th, 1886.